# EXHIBIT C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| JOHN T. DOE and JOHN U. DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Nos.   2024 L 014871 |
| v. | ) | 2024 L 014875 |
| | ) | |
| THE CATHOLIC BISHOP OF CHICAGO, a | ) | |
| corporation sole, and THE ARCHDIOCESE | ) | |
| OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| THE CATHOLIC BISHOP OF CHICAGO, a | ) |
| corporation sole, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN T. DOE, JOHN U. DOE, | ) |
| DOE 101, DOE 102, DOE 103, DOE 104, | ) |
| and DOE 105, | ) |
| | ) |
| Defendants. | ) |

## **COUNTERCLAIM AND THIRD-PARTY CLAIM**

The Catholic Bishop of Chicago, a corporation sole, by and through its attorneys, for its counterclaim and third-party claim against JOHN T. DOE, JOHN U. DOE, DOE 101, DOE 102, DOE 103, DOE 104, and DOE 105, states as follows:

## **INTRODUCTION**

1.      This action arises from Defendants' scheme to manufacture and assert fraudulent claims of priest sexual abuse for financial gain.  The scheme involves a quid pro quo among coconspirators who are associated by gang affiliation, friendship, or family: in exchange for a share of the anticipated settlement of a false claim, coconspirators tell their associates what to say to successfully pursue a false claim, how to embellish their purported

injuries, and refer them to plaintiff's lawyers who are expected to aggressively seek settlement even for the most dubious claims. In some instances, the coconspirators exchange money even before achieving a settlement, enabled by litigation funding loans that are obtained with the assistance of plaintiff's counsel.

2. The false claims against the Archdiocese have repeatedly been referred to as a "lick," which is slang for a scam or illicit way to get money or something of value. In recorded calls from jail and prison, claimants have talked about trying to "get on the lick," and about the help they have sought or obtained from others to pursue false claims.

3. The Archdiocese of Chicago endeavors to help real victims of clergy sexual abuse, by providing for counseling through its Office of Assistance Ministry, and by facilitating the resolution of legal claims by real victims outside of litigation. Defendants have sought to exploit the Archdiocese's pastoral response to real victims by asserting false claims. The false claims of abuse have hurt real victims, by diverting resources devoted to real victims, and by undermining the Archdiocese's ability to expeditiously resolve claims by real victims.

4. The Archdiocese, by this action, seeks recourse for Defendants' ongoing fraud, including injunctive relief and monetary damages.

## PARTIES, JURISDICTION, AND VENUE

5. The Archdiocese of Chicago (herein, the "Archdiocese") is an ecclesiastical entity of the Roman Catholic Church. The Archdiocese provides support and services to millions of people, including the Catholic faithful, in Cook County and Lake County, Illinois.

6. The Catholic Bishop of Chicago, a corporation sole was created by special Act of the General Assembly. *See* Private Laws of Illinois, 22nd General Assembly at 78 (1861).

7. The Catholic Bishop of Chicago, a corporation sole is the legal entity through which the Archdiocese of Chicago holds property and conducts business in the secular world.

8.     Counter-defendant JOHN T. DOE is a convicted heroin dealer and a member or former member of the Traveling Vice Lords street gang.  He is the plaintiff in Case No. 2024 L 014871.

9.     Counter-defendant JOHN U. DOE is a convicted murderer, and the plaintiff in Case No. 2024 L 014875.

10.     Third-Party Defendant DOE 101 is JOHN U. DOE's older brother.

11.     Third-Party Defendant DOE 105 was the plaintiff in Case No. 2022 L 000171. In 2024, DOE 105 received a settlement from the Catholic Bishop based on his false claim of sexual abuse.

12.     Third-Party Defendant DOE 102, in concert with DOE 101 and others, has orchestrated and profited from multiple false claims of sex abuse against the Archdiocese.

13.     Third-Party Defendants DOE 103 and DOE 104 are brothers and members of a faction of the Gangster Disciples street gang.  In concert with DOE 101 and others, DOE 103 and DOE 104 have orchestrated and profited from multiple false claims of sex abuse against the Archdiocese, in addition to the settlements they obtained from their own false claims.

14.     Counter-Defendant JOHN U. DOE is currently in the custody of the Illinois Department of Corrections.

15.     On information and belief, DOE 101 and DOE 102 are residents of DuPage County, Illinois.

16.     Third-Party Defendant DOE 104 is currently in the custody of the Illinois Department of Corrections.

17.     The other Defendants, on information and belief, are residents of Cook County, Illinois.

3

18. A list of the Counter-Defendants, Third-Party Defendants, and other persons assigned pseudonyms in compliance with various court orders is included as Exhibit A hereto.

19. Jurisdiction is proper pursuant to 735 ILCS 5/2-209(a)(2) because Defendants committed a tort within this State.

20. Venue is appropriate in Cook County pursuant to 735 ILCS 5/2-101 because the facts giving rise to the causes of action asserted in this Complaint took place in Cook County, and/or Defendants reside in Cook County, Illinois.

## PRIOR COURT RULINGS ON FALSE CLAIMS

21. This Court has twice imposed sanctions pursuant to Supreme Court Rule 137 based on a finding that the plaintiffs' allegations of sex abuse were not "well grounded in fact."

22. In 2018, this Court imposed sanctions against DOE 106. DOE 106, like various other claimants, falsely claimed to have participated in a basketball team coached by Daniel McCormack, a former priest of the Archdiocese.

23. The claim of DOE 106 was corroborated by false testimony of his cousin DOE 107.

24. DOE 107 himself had previously obtained a settlement from the Archdiocese. DOE 107's allegations depended on the corroboration of his close friend DOE 102, who had given money to DOE 107 from the proceeds of his own previous settlement, and to whom DOE 107 promised to pay from the proceeds of DOE 107's anticipated settlement. DOE 102 beat up DOE 107 after DOE 107 failed to pay DOE 102 what he had promised to pay.

25. DOE 107 recruited DOE 106 to bring a claim after spending the money from his own settlement.

26.    In a phone call in 2013, DOE 106 (who was in state prison) told DOE 107 "I got to get on the money train, man," and later in the call asks DOE 107 how much money he received from his own settlement with the Archdiocese.

27.    In a phone call in early 2014, DOE 106 talked with his girlfriend about the cars that his cousin had bought with his settlement money, and said, "I'm just ready to get out man so I can get my little slice of the pie and they really waiting on me to make moves. . . They waiting on me because they know I'm going to be a major asset to what they trying to accomplish."

28.    In a phone call with DOE 106 later in 2014, DOE 107 told DOE 106, "I think I want to put you on these cases now," and said that he would help him bring his claim after his release from prison.  DOE 106 responded, "Hell yeah, I need some ass free money, too. . . . As long as motherfucker ain't got to touch me for real, I don't give a fuck."

29.    In 2023, this Court imposed sanctions upon DOE 108.  DOE 108 was recorded in prison saying that it would be "easy" to bring a claim: "Everybody from out the 'hood can get that shit.  Everybody."

30.    DOE 108 is cousins with DOE 109.  The Archdiocese received DOE 109's false claim of sexual abuse in 2014.

31.    DOE 109 is longtime friends with DOE 103 and DOE 104.

32.    In 2008, DOE 109 was arrested with JOHN U. DOE and DOE 104 for battery.

33.    DOE 109 received a settlement for his false claim in 2017.

34.    In a phone call with DOE 109 in May of 2020, DOE 108 asked DOE 109 if he (DOE 108) should go ahead and mail to a lawyer the letter he had prepared outlining his false allegations of abuse.  DOE 109 advised, "everything good. . . She [the lawyer] gon' make sure you . . . she gon' prep you anyways, bro."

35.     In the call with DOE 108 in May of 2020, DOE 109 further commented that DOE 108 should not be concerned about the details of his allegations, because DOE 109 had successfully pursued his own false claim: "Look, it don't matter.  Like, even with SAFE [a program at the church where McCormack served], right?  I didn't go there. . . .  I wasn't even in a program, and, you feel me, I got a lick on 'em."

36.     DOE 108 bragged to DOE 109 about being able to "make myself cry and all that," and commented that, like DOE 109, he had never attended the SAFE program as claimed in his lawsuit.

37.     DOE 108, like DOE 109 and various other persons bringing false claims of sexual abuse against the Archdiocese, referred to his claim as a "lick," which is a scam or other illicit means for financial gain.

38.     In 2021, after a friend told DOE 108 that he, too was "trying to get on that lick . . . with that . . . Catholic Church shit," DOE 108 responded, "everybody get their turn."

39.     More than one dozen other false claims based on alleged abuse by McCormack have been abandoned by the claimants and their lawyers.

## ALLEGATIONS COMMON TO ALL COUNTS

40.     In 2012, DOE 101 and DOE 102 each settled claims with the Archdiocese based on their allegations that they were sexually abused by Daniel McCormack, a former priest of the Archdiocese.

41.     The settlements received by DOE 101 and DOE 102 included three main components: immediate monetary payments, "structured settlements" payable as annuities, and escrow payments held in trust.  The terms of the settlement agreements required the funds held in trust to be disbursed only for legitimate expenses related to employment, education, therapy, and childcare.

6

42.     In 2013, DOE 102's younger brother, DOE 110, also settled his claim against the Archdiocese based on alleged abuse by McCormack. DOE 110's settlement included three main components: immediate monetary payment, a "structured settlement" payable as annuities, and escrow payments held in trust. The terms of the settlement agreement required the funds held in trust to be disbursed only for legitimate expenses related to employment, education, therapy, and childcare.

43.     DOE 101, DOE 102, and DOE 110 quickly exhausted the money they had received from their settlements.

44.     In 2013 and 2014, DOE 101, DOE 102, and DOE 110 submitted fraudulent invoices to withdraw money from their escrows.

45.     In and around 2015, DOE 101, DOE 102, and DOE 110 sold the annuity portions of their settlements for pennies on the dollar.

46.     In 2016, the Office of the Cook County Sheriff published a notice of tax sale of a home owned by DOE 102 in Maywood.

47.     Having exhausted their own settlements, including the annuities that were intended to provide them with long-term support, DOE 101, DOE 102, and DOE 110 had a financial motive to identify, select, and assist other persons to bring false claims of abuse for profit.

48.     DOE 101 and DOE 102 established and have maintained an enterprise to profit from false claims of sex abuse through the allegations herein and the following acts:

a.      Recruiting, paying, and bribing others to pursue false claims of abuse;

b.      Testifying falsely to conceal their complicity and to promote the success of the false claims;

c.      Suborning perjury and otherwise coaching others as to how to successfully pursue false claims of sex abuse;

d.      Pooling funds obtained from false claims of sex abuse;

7

e.     "Reinvesting" those funds by advancing money to new claimants, in exchange for a share of future settlement proceeds; and

f.     Using violence and threats of violence to collect money from other participants in the conspiracy, and to maintain control of the flow of money from false claims of sex abuse against the Archdiocese.

49.     Defendants DOE 105, JOHN T. DOE, JOHN U. DOE, DOE 103, and DOE 104 have participated in and promoted the enterprise, by receiving money obtained from false claims, asserting their own false claims for profit, fraudulently concealing their own complicity and knowledge of the enterprise, and agreeing to let DOE 101 and DOE 102 control who will be allowed to assert false claims of abuse for the benefit of the enterprise.

**DOE 111**

50.     DOE 111 is a cousin of DOE 101's.  In 2014, the Archdiocese received DOE 111's claim based on alleged sexual abuse by McCormack.

51.     DOE 111 was shot and killed in December of 2022.  Prior to his death, DOE 111 was a member of the Ziploc Money Gang ("ZMG"), a faction of the Gangster Disciples. Members of ZMG sometimes identify themselves with the letters "EBE," which stands for "Eat Bitch Eat."

52.     ZMG is a criminal enterprise involved in drug trafficking and other criminal activities, primarily near Douglass Park on the West Side of Chicago.

53.     In 2011 and 2012, DOE 111 was incarcerated in Illinois state prison.  While DOE 111 was in prison, DOE 101 told him about the settlement that he expected to receive from the Archdiocese.  DOE 101 and DOE 111 agreed that DOE 101 would introduce DOE 111 to a lawyer after DOE 111's expected release from prison, so that DOE 111 could pursue a false claim of abuse.

54. In 2012, DOE 111 learned that DOE 101, DOE 102, and other claimants had used their settlements from the Archdiocese to buy cars, including a Mercedes-Benz, Audi, and Jaguar.

55. In March of 2012, DOE 111 was waiting for DOE 101 to settle his own claim. A friend of DOE 111's who also hoped to bring a false claim told DOE 111 that he'd "have to wait 'til [DOE 101] get paid off and shit to put a motherfucker on."

56. In 2013, DOE 111 expressed frustration to his then-girlfriend that DOE 101 had not yet "put [him] on a lick." DOE 111 said that unlike the other claimants who purchased fancy cars with their settlements, he planned to use the money from his false claim to buy "buildings."

57. In November of 2013, DOE 101 told DOE 111 that he and DOE 102 had introduced DOE 102's cousin, DOE 112, to a lawyer to pursue a false claim.

58. In November of 2013, DOE 101 told DOE 111 that the lawyer was "thirsty" to represent DOE 112 with respect to his claim of abuse.

59. In November of 2013, DOE 101 told DOE 111 that the lawyer would also be "thirsty" to represent DOE 111 with respect to his claim. Mimicking the lawyer, DOE 101 said that the lawyer would be saying, "Yeah, thank you for bringing him [DOE 111] in to me."

60. In November of 2013, DOE 101 told DOE 111 that everything with his claim would be "straight," because DOE 101 and DOE 102 would be "vouching" for him.

61. In November of 2013, DOE 111 said to DOE 101, "We on that, we get us a big check."

62. In or around 2014, DOE 101 and/or DOE 102 introduced DOE 111 to attorney William F. "Bill" Martin for the purpose of pursuing a false claim of sexual abuse. DOE 101 told DOE 111 what to say in order to successfully pursue his claim in exchange for DOE 111's

agreement to pay money to DOE 111 and DOE 102. DOE 111 agreed to pay money to DOE 101 and DOE 102 from his anticipated settlement with the Archdiocese.

63.     Upon information and belief, DOE 101 and/or DOE 102 told Martin that DOE 111 had come into contact with McCormack. DOE 101 and DOE 102 had convinced Martin that they could and would verify the allegations of potential clients claiming that they had been sexually abused by McCormack. DOE 101 and DOE 102 then "vouched" for the claimants, including DOE 111, whom they themselves had coached and referred to Martin for the purpose of pursuing false claims.

64.     In July of 2014, the Archdiocese received DOE 111's legal claim based on the false and fraudulent allegation that he had been sexually abused by Daniel McCormack.

65.     DOE 111 falsely claimed that he came into contact with McCormack through a summer basketball team coached by McCormack. DOE 101, in testimony under oath, corroborated DOE 111's claim of participation in the basketball team. DOE 101's testimony was false. DOE 101's testimony was calculated to increase the value of DOE 111's legal claim, and to therefore facilitate the payment of money to DOE 101 and DOE 102 for their help to DOE 111 in pursuing a false claim.

66.     In March of 2016, DOE 111 traveled to Miami with DOE 101, DOE 102, and others, a trip that was paid for with settlement money.

67.     On October 24, 2017, the Archdiocese reached an agreement through negotiations with attorney Martin to settle DOE 111's legal claim. The first settlement payment from the Archdiocese to DOE 111 was sent to Martin in December of 2017. A second settlement payment from the Archdiocese to DOE 111 was sent to Martin in March of 2018.

68.     DOE 101 had given money from his own settlement to DOE 111. When he learned about DOE 111's settlement, he expressed concern that he might not be paid back by DOE 111: "If he [DOE 111] think he gon' just fuck over everybody . . . I know you got your

paper . . . I'm beating your ass."  DOE 101 was clear that he would use violence to collect the money from DOE 111 if necessary: "You still have to feed me, motherfucker.  I'll pop your ass myself, if that's the case . . . I don't give a fuck."

69.      DOE 111 paid money to DOE 101 from the settlement he received from the Archdiocese.

70.      DOE 111 paid money, directly or indirectly, from the settlement he received from the Archdiocese, to his close friend and affiliate through the Ziploc/EBE gang JOHN U. DOE, who is the younger brother of DOE 101.

71.      DOE 111 also used money from his settlement to bond out Ziploc gang affiliate DOE 113 from Cook County Jail.

72.      DOE 111 gave money from the settlement he received from the Archdiocese to his close friend and affiliate through the ZMG/EBE gang DOE 114.  DOE 111 and DOE 114 spent the money received from DOE 111's settlement on a trip to Las Vegas and luxury clothing, among other things.



*DOE 111 (left) and DOE 114 in Las Vegas*

**CLAIMS FROM THE ZIPLOC MONEY GANG**

73.     To date, the Archdiocese has received more than 10 false and fraudulent claims of sex abuse from members of the Ziploc Money Gang.

74.     DOE 103 and his brother DOE 104 are members of ZMG.  The Archdiocese received their legal claims based on alleged abuse by McCormack in the spring of 2015, while DOE 111's claim was pending.



*Members of the Ziploc gang, including: false claimants DOE 113 (third from left, holding handgun), DOE 104 (white shorts and shirt), DOE 103 (red belt), DOE 115 (long hair and cutoff jeans), DOE 119 (sunglasses), and DOE 114 (hand over mouth).*

75.     On information and belief, DOE 103 and DOE 104 decided to bring their false claims after learning of the pendency of DOE 111's claim, and of the claim of their friend, DOE 109.  DOE 104, like DOE 111, falsely claimed to have played for a basketball team coached by McCormack.

76.     In or before 2016, DOE 101 and DOE 102 learned about the pending claims of DOE 103 and DOE 104.  Upon information and belief, DOE 103 and DOE 104 brought their claims with the encouragement and assistance of DOE 111, but without the assistance of DOE 101 and DOE 102.

77.     In order to maintain control over the revenue from false claims of sexual abuse, DOE 101 and DOE 102 did not want to allow anyone to recover money from such a claim without their permission and without agreeing to share the proceeds with them.

13

78.     Because DOE 103 and DOE 104 had not, like DOE 111, agreed to share the proceeds of their false claims with DOE 101 and DOE 102, DOE 101 and DOE 102 attempted to stop DOE 103 and DOE 104 from recovering on their claims.

79.     In or around December of 2016, DOE 101 and DOE 102 contacted attorney Martin, and told Martin that they believed DOE 103 and DOE 104's claims to be fraudulent. Martin put DOE 101 and DOE 102 in contact with Lyndsay Markley, the lawyer representing DOE 103 and DOE 104.

80.     In or around December of 2016, DOE 101 and DOE 102 told attorney Markley about their belief that DOE 103 and DOE 104's claims were false.

81.     On January 1, 2017, DOE 101 told DOE 111 about the conversation between DOE 101, DOE 102, and attorney Markley.  DOE 101 told DOE 111 that Markley seemed to acknowledge that the claims of DOE 103 and DOE 104 were dubious, but according to DOE 101 "she said she ain't gonna drop them 'cause, you know, she tryin' to get her cash, too."

82.     Markley proceeded to negotiate settlements of the claims of DOE 103 and DOE 104.  Their false claims were settled in March of 2017.  The settlement payments were delivered to attorney Markley between April and May of 2017.

83.     In 2017, DOE 103 and DOE 104 used their settlement money to purchase multiple new cars.  They also held parties at their home near the intersection of West 13th Street and South Troy Street on the West Side of Chicago.

84.     At one such party, DOE 103 and/or DOE 104 paid money directly to DOE 101 and DOE 102.  On information and belief, DOE 103 and DOE 104 agreed to work cooperatively with DOE 101 and DOE 102 to make more money from other false sex abuse claims, including by other members of the Ziploc Money Gang.

85.     Word of the 2017 settlements of DOE 103 and DOE 104 quickly spread.

86. In 2017, DOE 115 was being held at Cook County Jail. In May of that year, a family member told him about the settlements received by DOE 103 and DOE 104. Later that month, DOE 115's brother DOE 114 told DOE 115 that the money came from "Father Dan licks," with the claimants receiving $300,000 each. DOE 114 also told DOE 115 that DOE 101, DOE 102, and some other claimants traveled together to Miami.

87. While in jail, DOE 115 hoped that his friend DOE 111 would bond him out after receiving money from his own false sex abuse claim.

88. On December 8, 2017, DOE 115 spoke directly with DOE 111, who had already reached a settlement in principle with the Archdiocese. DOE 111 yelled out that he was going to "pick that check up . . . 'soon as my lawyer call me. Because that's all I'm waiting on is a phone call."

89. The Archdiocese received DOE 115's false claim of sexual abuse on February 14, 2018. DOE 101 had told DOE 115 that he would tell him what to say for his false claim, in exchange for payments of $50,000 each for DOE 101 and DOE 102.

90. DOE 115's younger brother DOE 114 was a longtime close friend and gang affiliate of DOE 111's.

91. DOE 114 testified as a witness for the defense in the 2014 murder trial of DOE 101's brother JOHN U. DOE, after DOE 101 put DOE 114 in touch with JOHN U. DOE's criminal defense lawyer.

92. In a recorded phone call from Cook County Jail in 2016, DOE 114 said: "I was trying to tell the motherfuckers, man, put me on the lick . . . I'd love to just sit back and not have to do shit no more."

93. Attorney Martin communicated DOE 114's false claim of abuse to the Archdiocese in July of 2020. DOE 114 agreed to share the proceeds of his false claim with DOE 101 and/or DOE 111 and/or other members of the Ziploc Money Gang.

15

94.     DOE 114 was shot and killed on or about December 31, 2020.

95.     In June of 2016, DOE 101 hosted a pool party at a fitness club.  The party was attended by several claimants, including DOE 114 and DOE 116.

96.     In May of 2017, DOE 117 was incarcerated in Illinois state prison on a gun conviction.  DOE 117 has a tattoo of "EBE" on his body, and is associated with several members of the Ziploc Money Gang.

97.     DOE 111 told DOE 117 that DOE 103 and DOE 104 got money.  On May 21, 2017, DOE 117's mother told DOE 117 that he should "put in" for the "motherfucking priest that every motherfucker done put in for," clarifying that she was referring to "Nick and them," i.e. to DOE 101 and his associates.

98.     DOE 117's mother subsequently communicated directly with DOE 101, to seek his assistance for DOE 117 to pursue a false claim of abuse.  On June 10, 2017, DOE 117's mother told DOE 117 that DOE 103 "and them" have "too much money" and went to Miami.

99.     On June 10, 2017, DOE 117's mother told DOE 117 he should "get on that lick." DOE 117 told his mother that they will "come up with something," and that "we gonna schedule it when I come home."

100.     DOE 117 was released from prison about one month later.  In the latter part of 2017, DOE 117 hired the same lawyers as DOE 115.  DOE 117's false and fraudulent claim was communicated to the Archdiocese on February 14, 2018.

101.     In a deposition on September 23, 2019, DOE 117 fraudulently asserted that he was a victim of sexual abuse.  DOE 117 fraudulently denied his knowledge of the 2017 settlements of DOE 103 and DOE 104.  In the deposition, DOE 117 also fraudulently concealed his communications with others regarding his claim.

102.    On February 14, 2018, the Archdiocese received the false and fraudulent claim of ZMG member DOE 118.  The false and fraudulent claim of DOE 118's half-brother and ZMG member DOE 119 was received by the Archdiocese on October 16, 2018.



*DOE 118 (left) and DOE 114 (right) in 2017 music video, which also featured DOE 121, DOE 111, and DOE 103*

103.    DOE 111 was considered a brother by DOE 118 and DOE 119.  DOE 111 had a son with a half-sister of DOE 118 and DOE 119's.  DOE 103 fathered children with a different half-sister of DOE 118 and DOE 119's.

104.    On information and belief, DOE 118 and DOE 119 agreed to share the proceeds of their false claims with DOE 101 and/or DOE 111 and/or other members of the Ziploc Money Gang.

105.    The Archdiocese received the claim of DOE 120, another member of the Ziploc Money Gang, in November of 2017.

106.    DOE 120 was arrested in 2012 for driving a stolen minivan.  At the time of the arrest, DOE 103 was a passenger.

107.    DOE 120 was arrested in 2013 with DOE 118 and DOE 119 for charges relating to marijuana.

17

108.   DOE 120 was arrested in 2014, together with DOE 117 and fellow Ziploc gang member DOE 113, for selling drugs.

109.   After DOE 104 received his settlement from the Archdiocese, in November of 2017 he referred DOE 120 to attorney Markley.  On information and belief, DOE 120 agreed to share the proceeds of his claim with DOE 104 and/or other members of the Ziploc Money Gang.

110.   DOE 120 was incarcerated in Sheridan Correctional Center between 2019 and 2021 for a heroin conviction.

111.   While incarcerated at Sheridan, DOE 120 encountered DOE 121, who is the half-brother of DOE 103 and DOE 104.

112.   DOE 120 told DOE 121 that he had hired attorney Markley for his McCormack claim, and suggested to DOE 121 that he could do the same thing.  Based on DOE 120's advice, DOE 121 obtained the contact information for Markley and hired her to pursue his own false claim of abuse.

113.   In discovery in his own lawsuit, DOE 120 fraudulently concealed his communications with DOE 121 and others regarding claims of abuse against the Archdiocese.

114.   DOE 120 told DOE 121 about the claims of DOE 118 and DOE 119 and others who were "lying."  DOE 121 knew that DOE 118 and DOE 119 were never in proximity to St. Agatha Church or McCormack—DOE 121 reasoned that if they could pursue false claims, then DOE 121 could, too.

115.   While they were incarcerated together, DOE 120 told DOE 121 what to say to successfully pursue his fraudulent claim.  Instead of claiming that he was abused by McCormack in connection with basketball, as DOE 104 had claimed, DOE 120 told DOE 121 that he should "use the church lick," saying that he came into contact with McCormack at St. Agatha Church.

116. DOE 121 took DOE 120's direction, and wrote a letter to attorney Markley claiming that he attended St. Agatha Church, and was abused by McCormack while helping McCormack clean the church and an office.

117. Before sending the letter based on the "church lick" to attorney Markley, DOE 121 read the letter over the phone to his sister DOE 122, who had previously hired attorney Markley for a claim not involving the Archdiocese.

118. DOE 121 sought advice from DOE 122 for his letter to Markley. DOE 121 expressed concern about writing his letter "the right way."

119. DOE 122 told DOE 121 that he shouldn't worry about the details, because attorney Markley was

> going to be looking at it as like, "Aw, damn, we got another millionaire woo woo woo woo woo woo." To be honest, like she, she, she really don't even give a fuck whether it's true or not. You know what I'm sayin', because at the end of the day it's a-- it's a bag goin' into her account. That's really what she's concerned about.
>
> . . .
>
> [A]s far as dates and shit, like she going to show you a whole bunch of shit. And she going to show you names, you know what I'm saying, and shit like that. And you just really going off everybody that she knows, you know what I'm saying? Like, like, period. Like you know what I'm saying, she pretty much know the information that you need, like, when it comes to everything.

120. Acting with the assistance and encouragement of DOE 120 and DOE 122, DOE 121 hired Markley to pursue his false claim of abuse.

121. DOE 120 told DOE 121 that attorney Markley would want to corroborate DOE 121's claim by speaking with DOE 121's friend, and that it would bolster DOE 121's claim if the friend would report that DOE 121 showed a "little gayness here and there." DOE 121 called the friend from prison, and told him to be prepared to corroborate the claim as suggested by DOE 120.

122.    The Archdiocese received the false and fraudulent claim of DOE 121 from attorney Markley in February of 2020.

123.    In 2015, attorney Markley communicated to the Archdiocese the false and fraudulent claim of DOE 123, who is a half-brother of DOE 103 and DOE 104.

124.    The Archdiocese reached a settlement with DOE 123 in the spring of 2017. The settlement payment was delivered to attorney Markley in June of 2017.

125.    In 2019, DOE 123 recruited his associate DOE 124 to bring a false claim against the Archdiocese. DOE 124, who was in Cook County Jail, hired Markley to represent him.

126.    DOE 103 and/or DOE 104 paid money from their Archdiocese settlements to DOE 124 via his jail commissary.

127.    Attorney Markley initially sought to have Attorney Condon represent DOE 124, with Markley to receive a share of the proceeds from the claim. Attorney Markley later directed DOE 124 to work with a different attorney instead of Condon.

128.    In a call from jail in 2019, DOE 124 said: "Everybody that I know that got the same lawsuit, it's for sure money. That's how the lawyers all on my case—it's for sure money. And I spoke to him already about it, and I told him like two months ago that I wanted to do the loan. He said, all right, he's going to look into it."

129.    In a call from jail in 2020, DOE 124 said: "I got two lawsuits in here. . . . It's, . . . that shit really a finesse, though. . . . That shit a finesse, this right here, motherfuckers put me on it. It's a little lick." "But it's, yeah, that's a fucking million-dollar settlement though."

130.    DOE 124 explained that after the settlements of DOE 103 and DOE 104, "they put him [DOE 123] on the shit and he put me on the shit."

131.    In the call, DOE 124 went on to say, "My shit already in play.  OG going to do that shit when I get out, so I'll be straight.  And my lawyer say it's best for me to handle that shit when I'm out.  They don't like talking about that shit when I'm in here."

132.    The Archdiocese received the false and fraudulent claim of DOE 124 in November of 2020.

133.    Between 2017 and 2020, DOE 113 was incarcerated in Illinois state prison.

134.    In a phone call from prison in 2017, shortly after the DOE 103 and DOE 104 settlements, DOE 113 talked about his associates' claims, saying "[DOE 103] and them ain't get touched.  I don't even think [DOE 103] and them went there, man.  They went in there, like I did.  We was going in there, but it's a lick.  It's a finesse, man."  When asked, "So, why you ain't do it?" DOE 113 responded: "I wanna know how they did it.  I'mma ask 'em, I'mma ask 'em, one on one, when I get out."

135.    In September of 2020, DOE 113 told DOE 104 that DOE 120 would give money obtained from his false claim to DOE 104, DOE 103, DOE 113, and another ZMG member.

136.    DOE 104 told DOE 113 that DOE 114 was going to be the next person to get money, along with DOE 119, DOE 118, DOE 120, and DOE 115.

137.    In September of 2020, DOE 113 told DOE 104 that he had a "lawyer number" and would be "on this business as soon as I get out" of prison.  DOE 113 explained that DOE 121 had helped him with his false claim while in prison: "I had to get up with [DOE 121], so he can get me a lick and shit."

138.    The Archdiocese received the false and fraudulent claim of DOE 113 in January of 2021.  On information and belief, DOE 113 agreed to share the proceeds of his claim with DOE 104 and/or other members of the Ziploc Money Gang.

139.    JOHN U. DOE is the younger brother of DOE 101.

140.    JOHN U. DOE was arrested in 2009 for murder.

141.    JOHN U. DOE was convicted of murder in 2014.  He has been in prison since his conviction, and is currently projected to complete his sentence in 2064.



*DOE 111 (left) and* JOHN U. DOE *(blue shirt), in photo posted by DOE 114*

142.    During his time in prison, JOHN U. DOE learned about the money DOE 101 was making from false claims of sexual abuse.

143.    During his time in prison, JOHN U. DOE learned about the money DOE 111 obtained from his false claim of sexual abuse against the Archdiocese with the assistance of DOE 101.

144.    DOE 101 used money he received from false sex abuse claims, including money from DOE 111's settlement, to pay for lawyers who were attempting to secure JOHN U. DOE's early release from prison.

145.    In or around 2018, DOE 101 told JOHN U. DOE that he would buy a Maserati for JOHN U. DOE.  DOE 101 told JOHN U. DOE that if JOHN U. DOE was not able to get out of prison, that DOE 101 would drive it for JOHN U. DOE.

146.     In 2019, DOE 101 introduced JOHN U. DOE to attorney Martin.   The Archdiocese received JOHN U. DOE's false and fraudulent claim of sexual abuse in October of 2019.

147.     JOHN U. DOE agreed to pay money to DOE 101 from his anticipated settlement with the Archdiocese.

148.     While in prison in August of 2020, JOHN U. DOE told a friend over the phone that his brother (DOE 101) "put [him] on the lick."   JOHN U. DOE said that DOE 111 would loan him additional money if needed, and that JOHN U. DOE would pay DOE 111 back from the proceeds of JOHN U. DOE's false claim.

149.     JOHN U. DOE falsely claims, like others who have used the "basketball lick," that he participated in a basketball team coached by McCormack.

150.     Attorney Martin referred JOHN U. DOE's claim to attorney Gregory Condon. DOE 101 communicated directly with attorney Condon to advance JOHN U. DOE's claim.

151.     Attorney Condon communicated JOHN U. DOE's claim to the Archdiocese on October 11, 2019.

## CLAIMS FROM THE MAO GANG

152.    DOE 110 is a member of the MAO gang and the younger brother of DOE 102.

153.    MAO is a criminal enterprise involved in drug dealing, counterfeiting, and other criminal activities, primarily near Douglass Park on the West Side of Chicago.

154.    MAO is a faction of the New Breed street gang.  MAO stands for "Murder All Opps."

155.    DOE 105 is a member of MAO.

156.    In 2017, 2018, and again in 2019, DOE 105 was arrested for passing counterfeit $20 bills, or for being in possession of counterfeit $20 bills.

157.    The Archdiocese received DOE 105's false and fraudulent claim of abuse in February of 2020.  DOE 105 falsely claimed that he worked in the "food pantry" at St. Agatha Church during the time McCormack served there.

158.    DOE 101 agreed to assist DOE 105's pursuit of his false claim by: referring DOE 105 to attorney Martin, telling DOE 105 what to say in his claim of abuse and damages, and by corroborating DOE 105's claim of coming into contact with McCormack at St. Agatha Church.  DOE 105 agreed to pay money to DOE 101 out of the proceeds from his false claim, in exchange for the assistance provided by DOE 101.

159.    DOE 105 pursued his false claim as an agent of the criminal enterprise described herein.

160.    DOE 105 entered into a settlement with The Catholic Bishop of Chicago in 2024.  DOE 105 represented in the settlement agreement that he was sexually abused by Daniel McCormack.

161.    DOE 105's representation in the settlement agreement that he was sexually abused by McCormack was false.

162.    DOE 105's representations, throughout the course of his lawsuit, that he was sexually abused by McCormack were false.

163.    DOE 105 intended for the Catholic Bishop to pay money to him in reliance on his false representations that he was sexually abused by McCormack.

164.    The settlement agreement reflects that the Catholic Bishop entered into the settlement agreement "in reliance on DOE 105's representation that he was sexually abused by McCormack."

165.    Pursuant to the settlement, the Catholic Bishop paid money to DOE 105.

166.    DOE 105 paid money from his settlement to DOE 101 and/or to the criminal enterprise described herein, directly or through one or more associates of DOE 101.

167.    DOE 105 paid money from his settlement to witnesses who, at his direction, gave false testimony at their depositions in DOE 105's case.

168.    DOE 105 paid money from his settlement to one or more other persons, including DOE 125, whom he referred to attorney Condon for the purpose of pursuing false claims of sex abuse against the Archdiocese.

169.    DOE 105 has agreed to assist DOE 125 and others with their false claims, so that they can repay DOE 105 the money given to them from DOE 105's settlement, plus additional profit.

170.    The Archdiocese received the false and fraudulent claim of DOE 125 from attorney Condon in January of 2023.

## OTHER FALSE AND FRAUDULENT CLAIMS

171.    The Archdiocese received the false and fraudulent claim of JOHN T. DOE in October of 2018.

172.    DOE 103 fathered a child with JOHN T. DOE's sister.

173. JOHN T. DOE is an associate of several other persons named herein, including other participants in the enterprise and false claimants DOE 103, DOE 111, DOE 113, and DOE 120, among others.

174. Like other fraudulent claimants including but not limited to JOHN U. DOE, JOHN T. DOE is using the "basketball lick," claiming that he was abused in connection with a basketball team coached by McCormack.

175. On information and belief, DOE 103 and DOE 104 agreed to assist JOHN T. DOE's pursuit of his false claim by: referring JOHN T. DOE to attorney Martin or attorney Condon, and by telling JOHN T. DOE what to say in his claim of abuse and damages. JOHN T. DOE agreed to pay money to DOE 103 and/or DOE 104 out of the proceeds from his false claim, in exchange for their assistance.

176. The Archdiocese received the false and fraudulent claim of DOE 126 in February of 2018.

177. DOE 126 falsely claimed that he met McCormack in the summer of 2003 in Douglass Park, where DOE 126 was sitting alone on a park bench. According to DOE 126, McCormack was walking his dog while wearing his priest's robe.

178. On January 8, 2018, DOE 126 met with the attorneys for his claim against the Archdiocese. DOE 126 received a ride to or from the lawyers' office from DOE 101.

179. DOE 126 told his cousin that DOE 122's case had just settled.

180. The cousin told DOE 126 that DOE 111's case had just settled, too. In fact, DOE 111's settlement had been reached only a few weeks prior.

181. DOE 126 told his cousin: "U gotta get the right lawyer number then call n set up a meeting tell them u was involved n u got proof they gon be thirsty".

182.     DOE 126 gave his cousin the phone number for the law firm that DOE 126 had hired for his own claim.  The cousin said he would call, and that he was "going [to] give them the lil script".

183.     In or around November of 2017, DOE 127 hired a lawyer to pursue a false claim of sexual abuse against the Archdiocese.  DOE 127 was a close friend of DOE 126's.

184.     DOE 127 alleged that he was sexually abused by Daniel McCormack at St. Agatha Church.  But DOE 127, who was born in 1973, was 26 years old when McCormack served at St. Agatha's, and therefore could not have been abused as a minor.

185.     In 2012, DOE 111, DOE 107, DOE 116, and others traveled to Los Angeles with DOE 101 AND DOE 102, a trip that was paid for with settlement money.

186.     The Archdiocese received the false and fraudulent claim of DOE 116 in June of 2014.  DOE 116, who was a close friend of DOE 102's, agreed to pay money to DOE 102 and DOE 101 from his anticipated settlement with the Archdiocese, in exchange for DOE 102's and DOE 101's assistance in pursuing his false claim.

187.     In 2017, after receiving his settlement payment from the Archdiocese, DOE 116 paid money to DOE 102 and DOE 101.

188.     The Archdiocese received the false and fraudulent claim of DOE 128 in May of 2018.

189.     DOE 128 fraudulently identified DOE 111 and DOE 101 as witnesses who would corroborate his false claim of abuse at St. Agatha Church.

190.     DOE 128 agreed to pay money to DOE 111 and DOE 101 from his anticipated settlement with the Archdiocese, in exchange for DOE 111 and DOE 101's assistance in pursuing his false claim.

191.     DOE 128's attorney discontinued his representation of DOE 128 after DOE 128 testified that he was sexually abused by McCormack at St. Agatha Church during a three-year period predating McCormack's service at St. Agatha.

## COUNT I

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### (RICO) 18 U.S.C. § 1962(c)

192.     The Catholic Bishop of Chicago incorporates by reference all allegations above as though fully set forth herein.

193.     Defendants engaged in an enterprise affecting interstate commerce, by, inter alia:

     a.   Receiving and transferring funds through nationally chartered banks, credit unions, and/or Internet-based electronic payment platforms;

     b.   Using funds from the enterprise for the purchase of vehicles, and other goods and services transported in or affecting interstate commerce;

     c.   Using funds from the enterprise for interstate travel, including travel associated with the promotion and planning of activities of the enterprise;

     d.   Advertising the enterprise and its profits on online social media;

     e.   Through the enterprise's fraudulently obtained settlements, reducing the ability of the Catholic Bishop to spend money on goods and services in and affecting interstate commerce.

194.     Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Archdiocese.

195.     Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple acts of mail and wire fraud and extortion.

28

196.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

197.     Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

198.     As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), the Archdiocese has been injured.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to be proven at trial, and for their costs, treble damages, attorneys' fees, and any other and further relief as this Court deems just and proper.

## COUNT II

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962(a)

199.     The Catholic Bishop of Chicago incorporates by reference all allegations above as though fully set forth herein.

200.     The activities of the enterprise constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

201.     As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), the Archdiocese has been injured.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to be proven at trial, and for their costs, treble damages, attorneys' fees, and any other and further relief as this Court deems just and proper.

## COUNT III

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962(d)

202. The Catholic Bishop of Chicago incorporates by reference all allegations above as though fully set forth herein.

203. As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(a) and (c).

204. Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

205. As direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), The Catholic Bishop of Chicago has been injured.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to be proven at trial, and for their costs, treble damages, attorneys' fees, and any other and further relief as this Court deems just and proper.

## COUNT IV

### COMMON LAW FRAUD — INJUNCTIVE RELIEF

206. The Catholic Bishop incorporates by reference all allegations above as though fully set forth herein.

207.    Defendants intended to take advantage of the Archdiocese's efforts to remedy and respond compassionately to allegations of clergy sexual abuse.

208.    These Defendants' conduct, including through supplying "scripts" to other Defendants for their claims of sexual abuse, in exchange for a "cut" of any settlement proceeds, were part of a scheme to defraud.

209.    Defendants knew their statements, including but not limited to false allegations of sexual abuse, made both individually and as others' agents, were false.

210.    The Archdiocese reasonably relied on the misrepresentations by, among other things, devoting resources to investigating the claims, defending the claims, and in some cases paying settlements to the fraudulent claimants.

211.    As the direct and proximate result of Defendants' misrepresentations, the Catholic Bishop has suffered damages.

212.    Defendants' conduct was willful and wanton, and made without regard to the Catholic Bishop's rights.

213.    Defendants' repeated, knowing, intentional, reckless indifference, and malicious conduct and false statements justify an award of punitive damages.

214.    An award of monetary damages would not be an adequate remedy because of the ongoing and continuous interference with the Archdiocese's investigation of potential, legitimate claims of abuse, and the irreparable harm caused by needing to dedicate resources to respond to false claims.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter an order temporarily, preliminarily, and/or permanently enjoining Defendants, and those acting in concert with them, from entering into any agreement by which they assert false claims of sex abuse against the Archdiocese based on false representations of fact, and

from transferring money in order to perpetuate such false claims and false representations of fact, and for such further relief as this Court deems just and proper.

<u>COUNT V</u>

**COMMON LAW FRAUD — DAMAGES (in the alternative)**

215.     The Catholic Bishop incorporates by reference all allegations above as though fully set forth herein.

216.     Defendants intended to take advantage of the Archdiocese's efforts to remedy and respond compassionately to allegations of clergy sexual abuse.

217.     Defendants' statements to the Archdiocese as to alleged abuse claims were part of a scheme to defraud.

218.     Defendants knew their statements, including but not limited to false allegations of sexual abuse, made both individually and as others' agents, were false.

219.     The Archdiocese reasonably relied on the misrepresentations by, among other things, devoting resources to investigating the claims, defending the claims, and in some cases paying settlements to the fraudulent claimants.

220.     As a result of Defendants' misrepresentations, The Catholic Bishop of Chicago has suffered damages.

221.     Defendants' conduct was willful and wanton, and made without regard to the the rights of The Catholic Bishop of Chicago.

222.     Defendants' repeated, knowing, intentional, reckless indifference, and malicious conduct and false statements justify an award of punitive damages.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to

be proven at trial, and for their costs, punitive damages in an amount double the actual damages, interest and any other and further relief as this Court deems just and proper.

## COUNT VI

### FREEDOM FROM INTERFERENCE WITH
### RIGHT TO CONDUCT LAWFUL BUSINESS

223.   The Catholic Bishop of Chicago incorporates by reference all allegations above as though fully set forth herein.

224.   Under Illinois law, the Archdiocese of Chicago is entitled to be free from improper and unjustified interference with its right to conduct a lawful business, which is a property right that equity may clearly intervene to protect.

225.   Defendants have interfered with the Archdiocese's lawful business through the submission of false statements of alleged clergy abuse.

226.   The Archdiocese has been damaged by this interference.

227.   Defendants' conduct has caused interference with the Archdiocese's business, including expending significant resources to investigate false claims, diverting those resources from the resolution of legitimate claims of abuse, and from other activities of the Archdiocese.

228.   Defendants' conduct was willful and wanton, and made without regard to the Archdiocese's rights.

229.   Defendants' repeated, knowing, intentional, reckless indifference, and malicious conduct and false statements justify an award of punitive damages.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to be proven at trial, and for their costs, punitive damages in an amount double the actual damages, interest and any other and further relief as this Court deems just and proper.

## COUNT VII

### CIVIL CONSPIRACY

230.    The Catholic Bishop incorporates by reference all allegations above as though fully set forth herein.

231.    Defendants reached an agreement and/or a series of agreements and conspired through concerted action and/or actions to commit the foregoing acts against the Archdiocese through, among other things: disseminating false "scripts" of alleged sexual abuse, asserting false claims of alleged clergy abuse, giving false testimony and procuring the false testimony of others, paying money to others to secure assistance with false claims; all in order to induce the Catholic Bishop to make settlement payments to the Defendants and otherwise to rely on the acts of the Defendants and their co-conspirators.

232.    Defendants each have taken steps in furtherance of their agreement to commit these acts, as set forth above.

233.    The conduct of Defendants in conducting the conspiracy was willful and wanton and committed with malice aforethought such that the Catholic Bishop is entitled to punitive damages in the amount of at least two times the compensatory damages sought.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to be proven at trial, and for their costs, punitive damages in an amount double the actual damages, interest, and any other and further relief as this Court deems just and proper.

## COUNT VIII

### AIDING AND ABETTING

234.    The Catholic Bishop incorporates by reference all allegations above as though fully set forth herein.

235.     Defendants reached an agreement and/or a series of agreements and conspired through concerted action and/or actions to commit the foregoing acts against the Catholic Bishop through, among other things: disseminating false "scripts" of alleged sexual abuse, asserting false claims of alleged clergy abuse, giving false testimony and procuring the false testimony of others, paying money to others to secure assistance with false claims; all in order to induce the Catholic Bishop to make settlement payments to the Defendants and otherwise to rely on the acts of the Defendants and their co-conspirators.

236.     Each Defendant has performed one or more wrongful acts, including but not limited to asserting false and fraudulent claims, testifying perjuriously, and conspiring to defraud the Archdiocese, causing injury to the Archdiocese.

237.     Each Defendant has aided and abetted the conspiracy to defraud the Archdiocese, while knowing of his or her role as part of the overall tortious activity of the conspiracy.

238.     Each Defendant has knowingly and substantially assisted in the conspiracy to defraud the Archdiocese, by asserting a false and fraudulent claim, assisting others in the pursuit of false and fraudulent claims, and otherwise.

239.     The conduct of Defendants in conducting the conspiracy was willful and wanton and committed with malice aforethought such that the Archdiocese is entitled to punitive damages in the amount of at least two times the compensatory damages sought.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter judgment against Defendants, jointly and severally, in an amount of actual damages to be proven at trial, and for their costs, punitive damages in an amount double the actual damages, interest, and any other and further relief as this Court deems just and proper.

## COUNT IX

### UNJUST ENRICHMENT

240. The Catholic Bishop incorporates by reference all allegations above as though fully set forth herein.

241. Defendants have unjustly retained a benefit to the detriment of The Catholic Bishop of Chicago, which has paid settlements to Defendants and others working in concert with Defendants based on false claims sex abuse.

242. Defendants' returns and profits from the false claims of sexual abuse violate fundamental principles of justice, equity, and good conscience.

WHEREFORE, The Catholic Bishop of Chicago respectfully requests that this Court enter an award of restitution, measured by Defendants' unjust gains, and for their costs, punitive damages in an amount double the amount of restitution, interest, and any other and further relief as this Court deems just and proper.

Respectfully submitted,

THE CATHOLIC BISHOP OF CHICAGO, a corporation sole

March 24, 2025                    By:    /s/ *Adam T. Rick*
                                      One of Its Attorneys

Adam T. Rick                      John V. Smith
Brian J. Hingston                 Alexander Beehler
Robin L. Mohr                     Daniel Maher
BURKE, WARREN, MACKAY &           FORAN GLENNON PALANDECH PONZI &
SERRITELLA, P.C.                  RUDLOFF, P.C.
330 N Wabash Ave, Suite 2100      222 N LaSalle St, Suite 1400
Chicago, IL 60611                 Chicago, IL 60601
312-840-7000 (tel.)               312-863-5000 (tel.)
Firm I.D. 41704                   Firm I.D. 38567

**EXHIBIT A**

| Counter-Defendants | Name |
|---|---|
| JOHN T. DOE | Shardell Green |
| JOHN U. DOE | Delamonte Hoy |
| | |
| **Third-Party Defendants** | |
| DOE 101 | Dominick Mahone |
| DOE 102 | Cordell Roman |
| DOE 103 | Joshua Bush |
| DOE 104 | Tony A. Bush |
| DOE 105 | William Moore |
| | |
| **Other Persons** | |
| DOE 106 | Ahmond Williams |
| DOE 107 | Christopher King |
| DOE 108 | Devin Little |
| DOE 109 | Christopher Henyard |
| DOE 110 | Steaven Clay |
| DOE 111 | Darian Neal |
| DOE 112 | Junito Burch |
| DOE 113 | Tavarius Jackson |
| DOE 114 | Alante Hands |
| DOE 115 | Reginald Jackson |
| DOE 116 | William Warrick |
| DOE 117 | George Coleman |
| DOE 118 | Roderick Moton |
| DOE 119 | Tyrone Booker |
| DOE 120 | Nicholas Devine |
| DOE 121 | Stanley Craig |
| DOE 122 | Kimbella Johnson |
| DOE 123 | Lajuan Reynolds |
| DOE 124 | DeAndre Thomas |
| DOE 125 | Trevon Maggett |
| DOE 126 | Sergio Brakie |
| DOE 127 | Leo Coleman |
| DOE 128 | Robert Floyd |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| JOHN T. DOE and JOHN U. DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Nos. 2024 L 014871 |
| v. | ) | 2024 L 014875 |
| | ) | |
| THE CATHOLIC BISHOP OF CHICAGO, a | ) | |
| corporation sole, and THE ARCHDIOCESE | ) | |
| OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| THE CATHOLIC BISHOP OF CHICAGO, a | ) |
| corporation sole, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN T. DOE, JOHN U. DOE, | ) |
| DOE 101, DOE 102, DOE 103, DOE 104, | ) |
| and DOE 105, | ) |
| | ) |
| Defendants. | ) |

**AFFIDAVIT OF DAMAGES PURSUANT TO SUPREME COURT RULE 222**

Under penalties of perjury pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned deposes and states the following:

In the above-captioned action, The Catholic Bishop of Chicago, a corporation sole seeks money damages greater than $50,000.

THE CATHOLIC BISHOP OF CHICAGO, a
corporation sole

March 24, 2025                    By:  /s/ *Adam T. Rick*